IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>　　　　Plaintiff,　　　　　　　)<br>　　　　　　　　　　　　　　　)<br>v.　　　　　　　　　　　　　　)　Case No: <u>3:21-CR-00097-S</u><br>　　　　　　　　　　　　　　　)<br>JOSEPH SALAZAR,　　　　　　)<br>　　　　Defendant　　　　　　)<br>_____ ) | |

## MOTION WITH INCORPORATED MEMORANDUM
## REQUESTING CLARIFICATION OF SENTENCE
\* \* \* \* \* \* \*

**COMES NOW** the Defendant, Joseph Salazar ("Salazar"), *pro se*[1], and hereby respectfully requests that this Honorable Court issue an order clarifying its September 29, 2023 Judgment. See: *DE 45*. This clarification is needed to effectuate the Court's explicitly stated intent for Salazar to receive a "sentence adjustment." That intent, memorialized in the final Judgment, is being actively frustrated by the Bureau of Prisons ("BOP"), which has failed to implement the adjustment, thereby unlawfully extending Defendant's term of imprisonment beyond that which this Court carefully crafted.

For the Court' consideration Salazar respectfully offers the following:

---

[1] Because Salazar is proceeding in this matter without the benefit of counsel, it is respectfully requested that the Court apply a liberal interpretation to the claims asserted herein. See e.g.: *Erickson v. Pardus*, **551 U.S. 89, 94 (2007)**.

I.     **INTRODUCTION AND SUMMARY OF ARGUMENT**

This is not a motion challenging the legality of the sentence imposed, nor is it a collateral attack under 28 U.S.C. § 2255. It is a necessary petition invoking this Court's inherent and indispensable authority to interpret and enforce its own orders. The issue before the Court is simple: when a sentencing court, with full awareness of the law, structures a sentence to achieve a specific, just outcome, can an executive agency charged with executing that sentence simply ignore the Court's stated intent? The answer, grounded in the separation of powers and fundamental principles of due process, must be no.

At sentencing, this Court imposed an 80-month term of imprisonment. But the sentence did not end there. In the final written Judgment, the Court included a specific, sophisticated provision designed to address a known statutory limitation and ensure that Salazar receive credit for time spent in custody prior to sentencing. See: *DE 45, p. 2*. This was not a casual recommendation; it was a deliberate judicial act—a structural component of the sentence designed to credit Salazar with approximately 30.7 months of pre-sentence custody that the Court knew the BOP would be statutorily barred from formally crediting. Despite this clear directive, the BOP has disregarded the Court's intent. It has computed Salazar's sentence as a straight 80-month term, affording him no benefit whatsoever for this period. The result is a sentence far longer than the one this Court imposed.

This motion respectfully requests that the Court clarify its Judgment to prevent this manifest injustice. The Court's inherent authority to say what its own

orders mean is beyond dispute. The BOP's authority to execute sentences is ministerial, not supreme; it cannot be wielded as a veto over a judicial mandate. This is particularly true in the modern legal landscape, where the Supreme Court has decisively moved away from the doctrine of mandatory deference to agency interpretations of law, empowering this Court to enforce its own judgment without regard to a conflicting agency position. This Court should issue a clarifying order directing that its intended "sentence adjustment" be implemented, ensuring that the sentence served is the sentence that was imposed.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

After having been adjudicated guilty the Court, on September 29, 2023, conducted a sentencing hearing and after considering the factors set forth in 18 U.S.C. § 3535(a), the Court sentenced Salazar to a term of 80 months' imprisonment for his conviction under 18 U.S.C. § 922(g)(1). The Court's written Judgment, entered the same day, memorialized that sentence and contained the crucial provision at the heart of this dispute:

> "Eighty (80) months as to Count 1 of the Indictment. It is the Court's intent for Defendant to receive a sentence adjustment to account for any time spend in custody beginning on March 9, 2021, that the Bureau of Prisons will not credit under 18 U.S.C. § 3585(b)." See: *DE 45, p. 2 (emphasis added).*

The period of custody specifically identified by the Court—from March 9, 2021, to September 29, 2023—amounts to approximately 30.7 months. The Court's language demonstrates a perfect understanding of the legal landscape. The Court knew that the BOP, pursuant to 18 U.S.C. § 3585(b), would likely be prohibited from

awarding formal "prior custody credit" for this time if it had been credited to another sentence. The Court therefore did not order the BOP to do what the statute forbids. Instead, it crafted a distinct remedy—a "sentence adjustment"—to achieve the same net effect and ensure fairness. However, in its sentence computation, the BOP has applied no such adjustment. It has calculated Salazar's sentence as a straight 80-month term, with a projected release date in mid-2029. This computation renders the Court's carefully worded provision a nullity and results in a sentence nearly three years longer than the Court intended.

### III. ARGUMENT AND AUTHORITIES

#### A. The Court Possesses Inherent Authority to Enforce and Clarify Its Own Judgments.

A court's duty does not end upon the entry of a judgment. Federal courts possess the inherent authority, separate and apart from any specific rule or statute, to interpret, clarify, and enforce their own orders to ensure that the mandate of the court is not frustrated. See e.g.: *United States v. Taylor*, 973 F.3d 414 (5th Cir. 2020). This power is essential to the preservation of judicial integrity and the finality of judgments. While post-judgment modifications of a sentence are strictly limited, a motion for clarification does not seek to "modify" or "change" the sentence; it seeks to effectuate the sentence as it was originally imposed. When an executive agency's execution of a sentence conflicts with the clear language and intent of the judgment, the sentencing court is the only tribunal that can definitively state what its own order means. This circuit has long recognized that the judicial act of sentencing is paramount, with the written judgment serving as the primary evidence of the

sentence imposed. See: *United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001) *(noting that the oral pronouncement controls in a conflict, underscoring the authority of the judicial act of sentencing)*. Here, the written Judgment itself contains the clear expression of intent that the BOP is ignoring. It is not only within this Court's power, but it is its duty to ensure that language is not rendered meaningless.

### B. The Principles of Due Process Require the Court to Ensure Its Orders Are Enforced.

The principles of due process demand that judicial proceedings be fundamentally fair. That fairness is rendered illusory if a court's final judgment can be disregarded by the very agency tasked with its execution. For a litigant like Salazar, this principle carries even greater weight. The Supreme Court has long held that the pleadings of *pro se* litigants are to be held to less stringent standards than formal pleadings drafted by lawyers and are to be liberally construed. See: *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). This doctrine is not a grant of special privilege, but a recognition that procedural fairness requires courts to look past technical formality to the substance of a litigant's claim, especially when that litigant is facing the immense power of the government. This Court's role in ensuring its own clear mandate is enforced is a cornerstone of the procedural due process to which Salazar is entitled. Clarification is not merely a procedural convenience; it is a necessary safeguard to ensure the sentence served is the one the Court actually pronounced, not the one an executive agency has decided should be served.

## C. The BOP's Authority to Compute a Sentence Is a Ministerial Function that Cannot Override the Substantive Intent of the Sentencing Court.

The United States will undoubtedly argue that the BOP has the exclusive authority to calculate sentence credits, citing the Supreme Court's decision in *United States v. Wilson, 503 U.S. 329 (1992)*. This reliance on *Wilson* is misplaced and fundamentally misconstrues the issue before this Court. In *Wilson*, the Supreme Court held that the Attorney General, through the BOP, is responsible for computing sentence credit under 18 U.S.C. § 3585(b). See: *Id. at 334-35*. The Court reasoned that this determination must be made after sentencing, as only then can the BOP verify that the time in question has not been credited against another sentence. *Id*. Salazar does not dispute this principle. However, the BOP's authority under *Wilson* is not a license to rewrite a federal sentence. The BOP's role is to execute the sentence the Court imposes; it is not a super-sentencing body with veto power over the judiciary. This Court's Judgment was crafted with full awareness of *Wilson*. The Court did not order the BOP to award § 3585(b) credit. Instead, it imposed a sentence of 80 months and made it clear that its intent was for that sentence to be adjusted precisely because the BOP would not credit it under § 3585(b). This "sentence adjustment" is a substantive component of the sentence structure itself—a judicially created mechanism to achieve a specific term of imprisonment. The BOP's refusal to implement it is not an exercise of its computational authority under *Wilson*; it is a usurpation of this Court's judicial sentencing function.

### D. The Judgment's Language Is a Mandatory Directive, and the BOP's Refusal to Implement It Violates the Separation of Powers.

The specific words used by this Court in its Judgment are of paramount importance. The Court did not use precatory or recommendatory language, such as "the Court recommends" or "it is hoped that." Such language would clearly signal a non-binding suggestion. Instead, the Court declared: "It is the Court's intent for Defendant to receive a sentence adjustment to account for…" The word "intent" coupled with the phrase "to account for" signifies a purpose, a plan, and a required outcome. It is a clear and unambiguous statement of judicial will that a specific calculation be performed. The choice to call this a "sentence adjustment" rather than "credit" was a sophisticated legal maneuver to avoid a direct conflict with § 3585(b), while still making the effect mandatory. Had the Court intended this to be a mere suggestion for the BOP to consider and reject, it would have used the well-established language of recommendation. It did not. It chose language of purpose and effect, creating a directive that is integral to the sentence itself.

The BOP's refusal to execute this mandatory directive directly infringes on the separation of powers. The judicial power to impose a sentence is vested exclusively in the Article III courts. See, e.g., _United States v. Booker_, 543 U.S. 220 (2005). The executive power to carry out that sentence is vested in Article II agencies like the BOP. This creates a necessary check and balance, but it does not empower the executive to nullify a judicial act. By refusing to implement the "sentence adjustment" this Court deliberately included in its final Judgment, the BOP is effectively exercising a legislative-style line-item veto over a component of this Court's sentence.

This action directly offends the separation of powers. See, e.g., *United States v. Klein, 80 U.S. 128, 146-47 (1871) (establishing that the legislature cannot impair the effect of a judicial act or prescribe a rule of decision for the judiciary).* Just as one branch of government cannot command another on how to rule, an executive agency cannot unilaterally edit a court's final judgment by ignoring the parts with which it disagrees. The BOP's role is to administer the sentence, not to question its wisdom or rewrite its terms. Allowing the BOP's inaction to stand would create a dangerous precedent where the executive branch can functionally overrule the judiciary, eroding the very integrity of the judicial process.

### E. The Demise of Chevron Deference Obligates this Court to Enforce Its Judgment Without Deferring to the BOP's Conflicting Interpretation.

For four decades, the doctrine announced in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), often required courts to defer to a federal agency's reasonable interpretation of an ambiguous statute. This framework frequently constrained judicial review, forcing courts to accept agency positions even when they conflicted with what might otherwise be the best interpretation of the law. In the context of sentencing, a court might have felt compelled to defer to the BOP's interpretation of its own statutory authority under Title 18, allowing the agency to claim broad discretion to ignore sentencing provisions it deemed inconvenient or contrary to its internal policies.

That era of mandatory judicial deference is over. In its landmark decision in *Loper Bright Enterprises v. Raimondo,* 603 U.S. ___ (2024), the Supreme Court explicitly overruled *Chevron*. The Court held that deference to agency statutory

interpretations is inconsistent with the Administrative Procedure Act and the Constitution. Writing for the majority, Chief Justice Roberts reaffirmed the judiciary's fundamental role, declaring that determining the meaning of the law "is the obligation of the courts alone," and that "courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." See Also: *Marbury v. Madison*, 5 U.S. 137, 177 (1803) *("It is emphatically the province and duty of the Judicial Department to say what the law is.")*.

The shift signaled by *Loper Bright* is not merely procedural; it is a foundational restoration of the separation of powers. As Justice Thomas highlighted in his concurring opinions over the years, *Chevron* deference was constitutionally suspect precisely because it transferred a core judicial power—the power of legal interpretation—to the executive branch. See, e.g., *Michigan v. EPA*, 576 U.S. 743, 761-64 (2015) (Thomas, J., concurring). By overturning *Chevron*, the Supreme Court has re-empowered district courts to robustly defend their own authority against executive encroachment.

The demise of *Chevron* is profoundly relevant to Salazar's case. This Court is no longer constrained by any obligation to defer to the BOP's interpretation of how the Court's Judgment interacts with sentencing statutes. This Court is the ultimate authority on what its own Judgment means, and the BOP's conflicting, self-serving interpretation is not entitled to any special weight. The Court is now free—and indeed, obligated—to exercise its independent judgment. In doing so, it can and should conclude that the BOP's position—that it can simply disregard a clear

statement of judicial intent in a final judgment—is legally incorrect and constitutionally untenable. The BOP is not entitled to deference, and its refusal to implement this Court's intended "sentence adjustment" must be rejected.

## IV. CONCLUSION

The BOP is forcing Salazar to serve a sentence significantly longer than the one this Court carefully and justly imposed. By ignoring the Judgment's explicit directive for a "sentence adjustment," the BOP has exceeded its ministerial authority and usurped a core judicial function.

**WHEREFORE** Salazar respectfully requests that this Court grant this motion and issue an order clarifying that its September 29, 2023 Judgment requires the BOP to adjust his 80-month sentence to account for the approximately 30.7 months he spent in custody prior to sentencing, thereby effectuating the sentence this Court intended.

*Respectfully Submitted,*

*Joseph Salazar*
**Joseph Salazar**
Reg #: 91882-509
Coleman I USP
846 NE 54th Terrace
Sumterville, FL 33521

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on this _27_ day of October 2025 did forward a true and correct copy of the foregoing Defendant's Motion with Incorporated Memorandum Requesting Clarification of Sentence – via the United States Postal Service, using postage pre-paid means, to the person(s) listed below:

Assistant United States Attorney
Northern District of Texas – Dallas Division
U.S. District Courthouse
1100 Commerce Street, Room 1452
Dallas, TX 75242

**ORIGINAL TO:**
United States District Court Clark
For Northern District of Texas – Dallas Division
U.S. District Courthouse
1100 Commerce Street, Room 1452
Dallas, TX 75242

**WITNESS MY HAND THIS** _27_ **DAY OF OCTOBER 2025**

_____
Witness

*Joseph Salazar*
Joseph Salazar



MR JOSEPH SALAZAR REG: 91882-5
5555555555
COLEMAN I USP
846 NE 54TH TERRACE
SUMTERVILLE FL 33521

0.1 LBS LTR    1 OF 1

SHIP TO:
UNITED STATES DISTRICT COURT CLERK
NORTHERN DISTRICT OF TEXAS
1100 COMMERCE ST STE 1452
DALLAS TX 75242-1310

TX 752 9-40

UPS 2ND DAY AIR    2
TRACKING #: 1Z 84R V87 02 1244 4002

BILLING: 3RD PARTY

RECEIVED OCT 30 2025 CLERK U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS